932 F.2d 971
 UNPUBLISHED DISPOSITION
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Dr. Sidney WEISSMAN, Plaintiff-Appellant,
v.
MICHAEL REESE HOSPITAL AND MEDICAL CENTER, an Illinois
corporation, and Dr. David Hawkins, Defendants-Appellees.
 No. 89-3719.
 United States Court of Appeals, Seventh Circuit.
 Argued Oct. 31, 1990.
Decided May 10, 1991.
 
 Before WOOD, JR., POSNER and EASTERBROOK, Circuit Judges.
 
 ORDER
 
 1
 Dr. Sidney Weissman appeals the district court's grant of defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Weissman seeks severance benefits and declaratory relief based upon the following claims: his reassignment and the resulting "intolerable" working conditions constituted a constructive discharge and qualified him for severance benefits; Michael Reese Hospital and Medical Center ("Michael Reese") improperly reduced the severance benefits to which he was entitled; and Dr. David Hawkins lacked authority to reassign him.
 
 
 2
 The district court found that Weissman, even if constructively discharged, was not "released" as required for recovery under the Michael Reese employee welfare benefit plan and that Michael Reese acted properly in denying him severance benefits. The district court added that even were Weissman entitled to severance benefits, the reduction in benefits was proper because of the timing of the relevant incidents. Finally, the court determined that Hawkins' alleged lack of authority to reassign Weissman did not interfere with Weissman's legal rights and therefore Weissman failed to state a claim upon which relief could be granted.
 
 
 3
 After reviewing the unpublished district court decision of the Honorable Ann Claire Williams, the briefs, and the record, and after listening to oral argument, we conclude that the district court properly analyzed and decided the issues in this case. Therefore, we AFFIRM the district court's decision for the reasons stated in the attached memorandum order of the district court.
 
 ATTACHMENT
 
 4
 IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN
 
 DISTRICT OF ILLINOIS EASTERN DIVISION
 
 5
 DR. SIDNEY WEISSMAN, Plaintiff,
 
 
 6
 v.
 
 
 7
 MICHAEL REESE HOSPITAL AND MEDICAL CENTER, et al., Defendants.
 
 
 8
 No. 88 C 8087.
 
 
 9
 Sept. 19, 1989.
 
 MEMORANDUM OPINION AND ORDER
 
 10
 The plaintiff, Dr. Sidney Weissman ("Weissman"), filed a three-count complaint against defendants Michael Reese Hospital and Medical Center ("Reese"), and Dr. David Hawkins ("Hawkins") pursuant to the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. Sec. 1001 et seq. and various bylaws of Reese. The defendants move to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the defendants' motion is granted.
 
 
 11
 * Rule 12(b)(6)
 
 
 12
 When ruling on a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), "the factual allegations contained in the plaintiff's complaint must be taken as true and must be viewed, along with all reasonable inferences to be drawn therefrom, in the light most favorable to the plaintiff." Meriwether v. Faulkner, 821 F.2d 408, 410 (7th Cir.1987), cert. denied, --- U.S. ----, 108 S.Ct. 311 (1987). A complaint should be dismissed only when "it appears beyond doubt that the plaintiff can prove no set of facts to support his claims that would entitle him to relief." Rutan v. Republican Party of Illinois, 868 F.2d 943, 954 (7th Cir.1989). A "court must construe pleadings liberally, and mere vagueness or lack of detail does not constitute sufficient grounds for a motion to dismiss." Strauss v. City of Chicago, 760 F.2d 765, 767 (7th Cir.1985).
 
 
 13
 The pertinent facts alleged in plaintiff's complaint are as follows. Weissman, a psychiatrist, was employed by Reese as a medical staff member from 1971 until July 12, 1988. Weissman also held the position of Director of Education and Training of the Department of Psychiatry at Reese. Weissman served on the hospital's Board of Trustees from 1985 until 1988.
 
 
 14
 In November, 1987, former President of Reese, Marvin Klein, appointed defendant Hawkins as Acting Chairman of the Department of Psychiatry, to serve on an interim basis for two years. In May, 1988, the current President of Reese, Dr. H.L. Nadler, appointed Hawkins permanent Chairman of the Department of Psychiatry. Dr. Nadler made this appointment without first appointing a search committee or getting the approval of the Board of Trustees, as is required by Reese's Medical Staff Bylaws.
 
 
 15
 From January through May, 1987, Weissman, in his capacity as a member of the Board of Trustees, opposed a merger between Reese and University of Chicago Hospitals. The merger had been proposed by Reese's administration, and Weissman claims that in retaliation for disagreeing with the administration, on July 13, 1988 he was reassigned by defendant Hawkins from his position as Director of Education and Training to Unit Chief of floor 2-West in the Department of Psychiatry. Plaintiff alleges the reassignment was "directed to humiliate and demean Weissman in the medical community and [was] intended to coerce Weissman to resign." Complaint, p 29.
 
 
 16
 Weissman refused to assume his new duties as Unit Chief of floor 2-West, and Reese notified Weissman that they considered his refusal to assume his new duties a resignation. Weissman was not awarded severance benefits, but had Reese determined he was entitled to such benefits, he would have received ten weeks' pay instead of 52 weeks' pay, because Reese had modified their benefit plan to reduce severance benefits, effective July 11, 1988.
 
 II
 Constructive Release
 
 17
 In Count I of his complaint plaintiff alleges that he was wrongfully deprived of severance benefits by defendant Reese because he was "constructively released" and therefore entitled to severance benefits under Reese's personnel policy. Plaintiff states that his removal from the post of Director of Education and Training and reassignment to Unit Chief of a psychiatric floor was intended to embarrass and humiliate him and thereby force his resignation. This "constructive release," plaintiff claims, is the equivalent of termination without cause, which is the prerequisite to receiving severance benefits under Reese's benefit plan.
 
 
 18
 At the outset, the court notes that the proper standard for a court to use when reviewing a denial of benefits under an employee welfare benefit plan, as defined in the Employee Retirement Income Security Act of 1974 (ERISA), as amended, 29 U.S.C. Sec. 1002, depends upon the amount of discretion given to the plan administrator. As the Supreme Court recently held in Firestone Tire and Rubber Company v. Bruch, --- U.S. ----, 109 S.Ct. 948, 956 (1989), "a denial of benefits challenged under [29 U.S.C.] Sec. 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."
 
 
 19
 When an administrator does have discretion to determine eligibility for benefits, courts are to use the arbitrary and capricious standard that was in place before Firestone to review benefit decisions. See Bali v. Blue Cross and Blue Shield Ass'n., 873 F.2d 1043 (7th Cir.1989). See also Young v. Standard Oil (Indiana), 849 F.2d 1039 (7th Cir.1988), cert. denied, --- U.S. ----, 109 S.Ct. 529 (1988). The Seventh Circuit has noted that
 
 
 20
 the scope of review under the arbitrary and capricious standard is narrow and a court is not to substitute its judgment for that of [an ERISA fiduciary].... [T]he fiduciary must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made.
 
 
 21
 Reilly v. Blue Cross & Blue Shield United of Wis., 846 F.2d 416 (7th Cir.1988) (quoting Motor Vehicle Manufacturers Association of the United States, Inc., et al. v. State Farm Mutual Automobile Insurance Co., et al., 463 U.S. 29, 43 (1983)), cert. denied, --- US. ----, 109 S.Ct. 145 (1988).
 
 
 22
 Plaintiff has failed to specifically allege in the body of his complaint that Reese is the administrator of the employee benefit plan. However, plaintiff attached portions of Reese's Personnel Policy entitled "Separation Types and Benefits" to his complaint. These excerpts indicate that Reese is the administrator of the plan and makes the determinations of eligibility for benefits with a fair degree of discretion. Under the plan, severance benefits are awarded only to "released" employees, and employees are deemed released when "it is in the considered judgment of management that the best interests of the Medical Center (and the employee) can be served by discontinuing an employment relationship." Complaint, Exhibit C-1. Given the amount of discretion granted to the hospital to determine severance pay eligibility, the dererential arbitrary and capricious standard of review would apply to such decisions.
 
 
 23
 The court finds it was not arbitrary and capricious of Reese to determine that plaintiff's reassignment and subsequent refusal to assume his new position was not a "release" and therefore that plaintiff was not entitled to severance benefits. In order to be "released" an employee must be "terminated without cause." Complaint, Exhibit C-1. Plaintiff claims his reassignment was so demeaning and humiliating that it constituted a "constructive release." First, this court doubts that plaintiff's reassignment, even though it caused plaintiff embarrassment, was sufficient to constitute constructive discharge. Second, even if plaintiff's complaint could be read generously enough to make out a claim for constructive discharge, such discharge would not have been wholly without cause, and therefore plaintiff still would not have been entitled to severance benefits.
 
 
 24
 Constructive discharge occurs when an employer "makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation." Bartman v. Allis-Chalmers Corp., 799 F.2d 311, 314 (7th Cir.1986) (quoting Young v. Southwestern Savings and Loan, 509 F.2d 140, 141 (5th Cir.1975)), cert. denied, 479 U.S. 1092 (1987). Plaintiff cites several cases in his Response to Defendants' Motion to Dismiss to support his constructive discharge claim, but only two relate to a claim of constructive discharge as a result of demotion. See Bernstein v. Consolidated Foods Corp., 622 F.Supp. 1096 (N.D.Ill.1984); Real v. Continental Group, Inc., 627 F.Supp. 434 (N.D.Cal.1986). In both Bernstein and Real the facts were much more extreme than the facts plaintiff has alleged. In Bernstein, managerial employees were demoted to positions requiring only one hour of work per day, so the court found there was a material issue of fact as to whether the plaintiffs were constructively discharged and denied defendant's motion for summary judgment. In Real, the court upheld a jury finding of constructive discharge after evidence was adduced to show "plaintiff was subjected to a continuous pattern of discriminatory treatment over a period of several months involving the deprivation of promotional opportunities, the denial of relocation benefits, and culminating in the offer of a nine-grade demotion." Real, 627 F.Supp. at 443-444. The court in Real focused on the pattern of discriminatory treatment, distinguishing Frazer v. KFC National Management Co., 491 F.Supp. 1099 (N.D.Ga.1980), aff'd without opinion, 636 F.2d 313 (5th Cir.1981), in which the plaintiff only claimed a single instance of demotion and no other discriminatory treatment. See also Steele v. Illinois Human Rights Commission, 160 Ill.App.3d 577, 513 N.E.2d 1177, 1181 (3d Dist.1987) ("a single instance of demotion without other acts of discrimination, is not constructive discharge").
 
 
 25
 Plaintiff in the case at bar only claims a single instance of demotion. In addition, plaintiff fails to describe the difference in his duties between one position and the other. Instead, plaintiff generally avers that his reassignment, which occurred over a year after his dispute with the administration, was an "act of retribution" and was "humiliating" and "demeaning." Complaint, paragraphs 27, 29. Similar claims did not survive a motion for summary judgment in Weihaupt v. American Medical Association, 874 F.2d 419 (7th Cir.1989). In Weihaupt, the plaintiff was demoted from director of a department to a staff member, and the plaintiff thereafter resigned. The court recognized that the demotion might have been "embarrassing" but it did not create a jury question as to whether plaintiff's "working conditions were so intolerable that he was forced to resign." Id. at 426. In sum, plaintiff does not offer sufficient factual or case law support to sustain a claim of constructive discharge, and therefore it was not arbitrary of Reese to deny him severance benefits.
 
 
 26
 However, even if this court were to read the case law and plaintiff's complaint extremely generously to find plaintiff pled sufficient facts to support such a claim, this still would not make Reese's denial of severance benefits arbitrary and capricious. This is because even if this court were to find plaintiff's reassignment an act of constructive discharge, such a discharge would not be "without cause," as is required by the release provision of the benefit plan. In his own complaint plaintiff alleges that Reese considered his comments in respect to the merger "counterproductive to the objectives of the incumbent administration." Complaint, p 11. Thus, plaintiff himself has alleged a possible ground for a finding of cause if his reassignment in fact constituted a constructive discharge. In short, it was not irrational for the hospital to determine that plaintiff was not "released" within the meaning of the plan and therefore not entitled to severance benefits.
 
 III
 Federal Common Law Claim
 
 27
 In Count I plaintiff also alleges that he is entitled to 52 weeks' of severance pay rather than ten weeks' pay because the reduction in severance benefits, which took effect July 11, 1988, "improperly deprive[d] Weissman of a relied upon and valuable contractual property right." Complaint, p 38. Plaintiff elaborates in his Response to Defendants' Motion to Dismiss that this contract right to not have severance benefits reduced is created under federal common law. Given the lack of case law support for such a proposition, the court finds that had plaintiff been entitled to severance benefits, it would not have been arbitrary and capricious for Reese to reduce such benefits before the event triggering eligibility occurred.
 
 
 28
 The Seventh Circuit in Young v. Standard Oil (Indiana), 849 F.2d 1039 (7th Cir.1988), cert. denied, --- U.S. ----, 109 S.Ct. 529 (1988), explained that severance benefit plans are "welfare" benefit plans, as opposed to "retirement or pension" benefit plans. Id. at 1045. As such, ERISA's "stringent accrual, vesting and funding requirements" which are imposed on pension or retirement plans are not imposed on severance benefit plans. Id. Therefore, any right against an employer's amendment or elimination of a severance plan cannot be derived from ERISA itself and must instead be found in some other source of law.
 
 
 29
 Plaintiff cites three district court cases which suggest that an employee may acquire a contractual right, enforceable under federal common law, to not have welfare benefits reduced or eliminated. However, two of the cases plaintiff relies on were reversed. In reversing In re White Farm Equipment Co., 42 B.R. 1005 (N.D.Ohio 1984), the Sixth Circuit court stated that "the district court erred in ruling that an employer may not terminate, as a matter of 'federal common law' under ERISA, the welfare benefits of retired employees." In re White Farm Equipment Company, 788 F.2d 1186, 1193-94 (6th Cir.1986). The Sixth Circuit quoted this language again in Musto v. American General Corp., 861 F.2d 897, 907 (6th Cir.1988), cert. denied, --- U.S. ----, 109 S.Ct. 1745 (1989). Thus, plaintiff's reliance on the reversed district court decision in Musto, 615 F.Supp. 1483 (M.D.Tenn.1985), is again misplaced. In the third case plaintiff cites in support of its federal common law claim, Wayne Chemical v. Columbus Agency Service, 426 F.Supp. 316 (N.D.Ind.1977), the court did fashion a federal common law rule of decision in an ERISA case. However, the specific issue in that case was whether insurance coverage should be extended for the injured son of an employee, not whether severance benefits to an employee could be reduced. Moreover, when the Seventh Circuit took the case on appeal they specifically declined to reach the federal common law issue because they found that Indiana law governing the transactions had not been preempted by ERISA. See Wayne Chemical, Inc. v. Columbus Agency Service Corp., 567 F.2d 692, 697 (7th Cir.1977). Because ERISA itself does not provide any rights against reduction of severance benefits and because there is no compelling case law support for enforcing such a claim under federal common law, this court finds it was not arbitrary and capricious of Reese to reduce severance benefits under its personnel policy.
 
 
 30
 In conclusion, plaintiff has failed to allege facts in his complaint sufficient to support a claim that Reese arbitrarily and capriciously denied him severance benefits. It was not irrational for Reese to decide that plaintiff's reassignment, which occurred over a year after plaintiff's dispute with the administration, was not intended to elicit plaintiff's resignation nor to retaliate against plaintiff in any way. Moreover, Reese could have reasonably concluded that even if the reassignment was intended to elicit plaintiff's resignation, it was not the equivalent of termination "without cause," which is the prerequisite for entitlement to severance benefits. Finally, even if Reese had awarded plaintiff severance benefits, it would not have been arbitrary and capricious to have awarded a reduced amount because plaintiff has no federal common law right to a previously existing higher award. Thus, because plaintiff failed to allege facts sufficient to support his claim that he was wrongfully deprived of 52 weeks' of severance pay, Count I must be dismissed.
 
 IV
 Violation of Hospital Bylaws
 
 31
 In Counts II and III of his complaint, plaintiff alleges that his reassignment was improper both because Hawkins, who made the reassignment, was appointed chairman of the Department of Psychiatry in contravention to Reese's Medical Staff Bylaws and therefore lacked authority to reassign him and because the procedures Hawkins used for the reassignment violated the Medical Staff Bylaws. It is not clear from plaintiff's complaint and Response to Defendant's Motion to Dismiss what legal rights of the plaintiff were violated by defendants' alleged violation of Reese's Medical Staff Bylaws. In his complaint plaintiff states that the bylaws "by implication became and are incorporated into the employment contract between Weissman and Reese." Complaint, p 77. Such an allegation could be read as an attempt to state a claim for breach of contract. However, plaintiff alleges no further facts about the formation or terms of his contract, whether it encompassed his position as Director of Education and Training nor how the bylaws became incorporated into his contract "by implication." To confuse matters further, plaintiff states in his Response that he does not "seek protection of his employment status in the hospital by-laws." See Plaintiff's Response to Defendant's Motion to Dismiss at 12. In order to construe the complaint in a light most favorable to the plaintiff, this court will infer that the plaintiff is claiming he is entitled to some legal remedy for the alleged violation of hospital bylaws by the defendants.
 
 
 32
 Although violation of the Medical Staff Bylaws may create legally enforceable rights in the context of a removal from or reassignment to a medical staff position, they do not create the same rights in the context of changes in administrative positions. The Hospital Board Bylaws, which authorize the promulgation of Medical Staff Bylaws, state that the Medical Staff Bylaws extend rights to medical staff "who concurrently serve in executive or administrative positions with the Hospital insofar as the professional staff membership privileges of such persons at the Hospital are concerned, but not with regard to their executive or administrative positions." Complaint, Exhibit D-2. Moreover, the preamble to the Medical Staff Bylaws states that the bylaws are intended to "provide a framework for medical staff activities." Complaint, Exhibit E-1. Thus, plaintiff cannot state a claim under the bylaws based on their violation in the context of administrative position changes.
 
 
 33
 Plaintiff has failed to allege whether his position as Director of Education and Training or the position of Unit Chief of a psychiatric floor were medical staff or administrative positions. Given the aforementioned nonapplicability of the Medical Staff Bylaws to administrative positions, the distinction is critical. The Circuit Court judge presiding over this case before it was removed to this court found the position of Director of Education and Training to be administrative. See Petition for Removal, Exhibit C, pp. 3-4. Based on this finding, and the lack of any allegations by plaintiff to the contrary, this court finds plaintiff's complaint cannot be read to assume the positions of Director of Education and Training and Unit Chief of a psychiatric floor were strictly medical staff positions. Therefore, allegations of violations of the Medical Staff Bylaws in the process of transferring plaintiff from one position to the other do not state a claim upon which relief can be granted.
 
 
 34
 Moreover, even if plaintiff had alleged sufficiently that the positions at issue were medical staff positions and thereby afforded some protection by the bylaws, plaintiff fails to adequately identify specific sections of the bylaws that were violated by his reassignment. Plaintiff claims that Dr. Nadler's appointment of Hawkins to the position of permanent chairman of the Department of Psychiatry without first appointing a search committee or getting the approval of the Board of Trustees violated the bylaws, and Hawkins therefore lacked authority to reassign plaintiff. But plaintiff fails to point to specific provisions stating that only a department chairman may remove a staff member. The only provision plaintiff cites as being violated by his reassignment is Section 3 of the Medical Staff Bylaws, relating to division directors. Complaint, Exhibit E-3. Plaintiff fails to allege that either position (Director of Education and Training or Unit Chief) was a division director position. In addition, the provision plaintiff cites only deals with appointment and not removal of division directors. Thus, plaintiff's allegations and exhibits are woefully incomplete to state a claim for violation of the Medical Staff Bylaws in his reassignment, even if the bylaws did provide him with legal rights.
 
 
 35
 Plaintiff's general contentions that Hawkins lacked authority to reassign him because his appointment by Dr. Nadler did not conform to the Medical Staff Bylaws are also contradicted by other allegations in plaintiff's complaint. For example, plaintiff alleges Hawkins was properly appointed interim chairman by Marvin Klein for a two year period, and that period had not yet expired when Hawkins reassigned plaintiff. See Complaint, p 79 and Exhibit F. Also, Exhibit A of plaintiff's complaint shows that Hawkins notified current president Dr. Nadler of plaintiff's reassignment, giving further authority for Hawkins' actions. In short, plaintiff's own complaint and exhibits reveal that Hawkins' continuing tenure as interim chairman coupled with the fact that Hawkins notified Reese's president of his actions gave Hawkins sufficient authority to reassign plaintiff. For the foregoing reasons, plaintiff's Counts II and III must be dismissed.
 
 Conclusion
 
 36
 The defendants' motion to dismiss plaintiff's complaint is granted.
 
 ENTER:
 
 37
 /s/Ann Claire Williams, Judge
 
 United States District Court